IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KELLY S. MAHNKE,

                Plaintiff,                OPINION AND ORDER

v.

                                                        09-cv-408-wmc[1]

DANIEL GARRIGAN,

                Defendant.

---

Plaintiff Kelly S. Mahnke is proceeding on her 42 U.S.C. § 1983 claims that defendant Daniel Garrigan of the Columbia County Sheriff's Department violated her Fourth and Fourteenth Amendment rights when he removed her horse from her possession on July 4, 2003, based on the mistaken belief that it had been mistreated. On April 7, 2010, defendant Garrigan filed a motion for summary judgment (dkt.#30) and Mahnke cross moved for summary judgment on April 8, 2010 (dkt. #41). While defendant Garrigan has been adjudicated to have violated plaintiff's Fourth Amendment rights in seizing Mahnke's horse without probable cause, he is shielded from liability under § 1983 by the doctrine of qualified immunity because a reasonable law enforcement officer could have mistakenly believed that he had probable cause to do so. In addition, Garrigan is entitled to judgment as a matter of law on Mahnke's Fourteenth Amendment due process claim because Mahnke had adequate post-deprivation remedies to challenge the taking of her horse.

---

[1] This case was reassigned to Judge William Conley pursuant to a March 31, 2010 administrative order.

1

UNDISPUTED FACTS

The following facts are material and undisputed:

**I. Parties**

Plaintiff Kelly S. Mahnke is an adult resident of Cambria, Wisconsin. Defendant Daniel Garrigan is a Detective Sergeant employed by the Colombia County Sheriff's Department.

Mahnke owns "April," a 32-year old horse. She boarded April at the DuWayne Stork farm from June 2003 until July 4, 2003 and had previously boarded April at the home of Randy Reuter in Oxford, Wisconsin.

**II. Seizure of Mahnke's horse**

On July 4, 2003, defendant Garrigan was dispatched to the Stork farm because of a complaint of animal abuse or neglect. He was aware of prior complaints of animal mistreatment and of officers being called out to the Stork farm because of previous complaints. The weather on that day was very hot and humid with the temperature of over 100 degrees and a heat index of 110 degrees. When Garrigan arrived at the property there were five horses, including Mahnke's horse, in a penned area near the road with many other horses in a larger, adjacent pasture. The women who had complained about the treatment of the horse, Shirley Hoel and Katherine Schroeder, were at the Stork farm when Garrigan arrived.

Garrigan observed that there were two potential sources of water available to the horses in the penned area, a large fuel tank and a small pail. There was a wire running across

2

the fuel tank such that there was only about a foot of clearance. Garrigan was concerned that the horses could not get to the water without touching the wire. The small pail had less than five gallons of yellow brown water and mud in it. The pail would be adequate to water horses of smaller stature. Garrigan observed that there was little if any shade available to the horses in the penned area.

At the time, there was also no food available to the horses. There was food stored in closed buckets. The grass in the pen had been eaten to the ground. All five of the horse in the pen were thin to very thin. At least two of the horses had open sores that were readily visible to a lay person. Mahnke's horse was notably sluggish and required assistance to get into the trailer.

Defendant Garrigan called Dr. Jennifer Thompson at the Lodi Veterinary Clinic. Dr. Thompson could not come out to the farm to see the horses. She told Garrigan that without seeing the horses she could not give him an opinion whether the horses were being treated properly. After consulting with the Columbia County Sheriff, Garrigan decided he would take the horses into protective custody under Wis. Stat. § 173.13.

Stork arrived at the farm as the horses were being loaded into the trailer of Shirley Hoel, who had agreed to take temporary custody of the horses. He told Garrigan that one of the horses belonged to Mahnke. Stork showed Garrigan containers of food and hay in the barn and told him he had just bought food.

Garrigan told Stork he did not feel the horses appeared to be receiving the care they needed. Then, Garrigan told Hoel to finish loading the horses and leave.

Defendant Garrigan spoke with Mahnke after the horses were taken. She was very upset that he had taken her horse and told him she went out to the farm twice a day to feed her horse. She told him that her horse requires special feed and could not eat hay.

### III. State Court Proceedings

Pursuant to Wisconsin Statutes, a political subdivision may take an animal from an owner when there are reasonable grounds to believe that the owner has mistreated the animal in violation of ch. 951. Wis. Stat. § 173.21(1)(a). Chapter 951 of the Wisconsin Statutes defines crimes against animals, including: (1) the mistreatment of animals, § 951.02; (2) failing to provide proper food and drink to confined animals, § 951.13; and (3) failing to provide proper shelter, § 951.14. The statutes also provide a procedure for review of the seizure or withholding of an animal. Wis. Stat. § 173.22. The owner may seek return of the animal by filing a petition for an order from the circuit court for the county in which the animal was taken into custody.

Charges were filed in Columbia County Circuit Court against Mahnke for the crime of mistreating animals pursuant to Wis. Stat. § 951.02. *State v. Mahnke*, Case No. 2003-CM-00666, Wis. Cir. Ct., Columbia County Sept. 26, 2003. These charges were dismissed on April 8, 2004.

Mahnke filed a petition in Columbia County Court for the return of her horse, arguing that the seizure of her horse was unlawful. *Mahnke v. Columbia County,* Case No. 2003-CV-00359 (Wis. Cir. Ct., Columbia County Sept. 18, 2003). Although Mahnke's horse was returned, defendants filed a counterclaim to be reimbursed for the costs of caring

for her horse, claiming that Detective Garrigan had both reasonable grounds and probable cause to believe that there had been a violation of Wisconsin statutes chapter 951. A trial to the court was held before Columbia County Circuit Court Judge Patrick J. Taggart on December 5, 2005, and January 20, 2006. In his May 24, 2006 decision, Judge Taggart stated that the issue was whether Detective Garrigan took plaintiff's horse into protective custody without proper authority. (Dkt. #37, Ex. B at 1.) He stated that the statute, Wis. Stat. § 173.21(1)(a), provided that the animal could be taken if there were reasonable grounds to believe that the owner had mistreated the animal. (*Id.* at 2.) Judge Taggart held that Detective Garrigan had probable cause to believe that plaintiff's horse was being neglected or mistreated based upon his training and experience, his common sense and on the conditions he observed. (*Id.* at 4.) He ordered that plaintiff pay the costs of caring for her horse while in the county's custody in the amount of $1,184.46. (*Id.*)

In an unreported decision, the Wisconsin Court of Appeals reversed Judge Taggart's decision. *Mahnke v. Columbia County*, No. 2006AP1771 (Wis. Ct. App. May 3, 2007); Dkt. #37, Ex. F. In determining whether there was reasonable grounds to believe that Mahnke had mistreated her horse, the court addressed Wis. Stat. §§ 951.13(1) and 951.14(2)(a) and not § 951.02 (dkt. #37, Ex. F at ¶8), which was the section of the statute that Mahnke was charged with violating and pursuant to which her horse was seized. The appellate court noted that the parties agreed that the "reasonable ground" standard should be considered akin to the probable cause standard for an arrest that applies in Fourth Amendment law. (Id. At ¶9.) The appellate court held as follows:

> Given that the detective observed many more of what looked to him to be healthy horses than unhealthy horsey on the farm, and given that nothing in the detective's training or experience allowed him to determine whether the horses in the enclosure were suffering from illness rather than neglect, we see nothing in the officer's knowledge that provides, probable cause, that is provides reasonable grounds to believe that April had been mistreated by a violation of the adequate food statute.

(*Id.* at ¶ 14.) The court concluded that the seizure of Mahnke's horse was unwarranted and that she should not be charged the County's costs in caring for the animal. On September 13, 2007, the Wisconsin Supreme Court denied Columbia County's petition for review. (Dkt. #44, Ex. L).

Sheriff Maury Straub, the current President of the Wisconsin Sheriffs and Deputy Sheriffs Association and a Director on the Board of the Badger State Sheriffs Association is of the opinion that based upon the totality of the circumstances on July 4, 2003, and upon the law as understood by law enforcement officers at that time, as well as today, a reasonable sheriff's deputy could determine that there was probable cause that the horses were being neglected or abused in violation of state law.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). The party that bears the burden

of proof on a particular issue, nonetheless, may not rest on its pleadings, but must affirmatively demonstrate, through the proposal of specific facts, that there is a genuine issue of material fact that requires a trial. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Further, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Services, Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter. but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). In this case, there is no genuine, material issue of fact for trial.

**I. Fourth Amendment Claim**

Mahnke claims that the seizure of her horse violated her Fourth Amendment right to be free from an unreasonable seizure. A horse can be seized pursuant to Wisconsin statutes if there are reasonable grounds to believe that the owner has mistreated the animal in violation of chapter 951 of the statutes. The parties agree that reasonable ground to believe is akin to the probable cause for arrest standard. Thus, a threshold issue is whether Garrigan

had probable cause to believe that Mahnke had mistreated the animal in violation of Wisconsin statutes.

Probable cause for an arrest exists if the facts and circumstances within a police officer's knowledge were sufficient to warrant reasonable belief that a suspect had committed, was committing or was about to commit a crime. *Wollin v. Gondert*, 192 F.3d 616, 622 (7th Cir. 1999). The probable cause inquiry is an objective one and depends on the facts as they would have appeared to a reasonable person in the position of the arresting officer. *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. May 21, 2010).

The parties agree that at the time of seizure: (1) it was a very hot and humid day; (2) there were five horses penned apart from more healthy looking horses; (3) there was no food or water available to the horses; (4) there were open sores on two of the penned horses; (5) the penned horses were thin to very thin; and (6) Mahnke's horse was sluggish. On the other hand, as the Wisconsin Court of Appeals pointed out, there was a closed container of feed in the enclosure and hay in the barn, Stork drove up with fresh bags of feed before the horses were removed and there were other healthy horses on the farm.

Assessing the undisputed facts facing defendant Garrigan at the time he seized the horses, it is a close call whether he had probable cause to seize the horse. Indeed, the state circuit and appellate courts themselves split on this very question. This lawsuit need not, and indeed, cannot relitigate the issue of probable cause. The parties have already fully and finally litigated that issue in state court. For this reason, the Wisconsin Court of Appeals holding controls as a matter of issue preclusion, and this court is compelled to assume that

Garrigan did *not* have reasonable grounds for probably cause to believe that Mahnke's horse had been mistreated in violation of the adequate food statute.

Unfortunately for Mahnke, the inquiry does not end with a determination that Garrigan lacked "probable cause" to seize the horse as it did in state court. To prevail on plaintiff's Fourth Amendment claim in federal court, she must overcome Garrigan's claim of qualified immunity, a doctrine which "shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). And plaintiff fails to do so.

## II. Qualified Immunity

The doctrine of qualified immunity protects those law enforcement officers who make a reasonable error in determining whether there is probable cause. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). If Garrigan can establish that he had "arguable probable cause" for the seizure, then he is entitled to qualified immunity, even though the Wisconsin Court of Appeals later determined that he did not actually have probable cause. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). This is an objective, not a subjective, standard: a law enforcement officer is entitled to qualified immunity if a "reasonable officer" could have mistakenly believed that probable cause existed. *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir. 1995).

Mahnke argues that defendant Garrigan is not entitled to qualified immunity as a matter of law consistent with the Seventh Circuit's decision in *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001). Siebert claimed that Severino, a volunteer investigator for the Illinois

9

Department of Agriculture, seized her three horses without a warrant in violation of the Fourth Amendment. At the time of the seizure, the horses were in a fenced in area with access to food and water and the temperatures ranged from 28 to 42 degrees. *Id.* at 652. An Illinois statute provided that the horses could be seized without a warrant where the investigator contacted the Department of Agriculture and sought authorization to impound the animals. *Id.* at 656. The Seventh Circuit found that Severino obtained permission to impound the animals by misrepresenting their condition. Further, the court found that he did not have exigent circumstances to justify a warrantless seizure of the animals. *Id.* at 657.

Severino argued that regardless of whether he had probable cause he was entitled to qualified immunity. *Id*. at 658. The court addressed the issue of whether a reasonable officer could have mistakenly believed that exigent circumstances existed to justify the warrantless seizure. It found that a reasonably informed governmental worker authorized to ensure humane care would know that the condition of the horses did not constitute exigent circumstances. *Id.*

Mahnke's case is different than *Siebert* in several important respects. First, Garrigan was not required to obtain a warrant or establish exigent circumstances to act under Wisconsin law. To seize her horse, Garrigan only required reasonable grounds to believe the horse was being mistreated. Wis. Stat. § 173.21(1)(a). Second, the immediate circumstances were more dire for the horse seized by Garrigan than those seized by Severino: the temperature was over 100 degrees; the horses in the pen had no water or food accessible to them; and they had very little, if any, shade. Third, the horses themselves were in worse shape: they were thin to very thin, two had open sores and Mahnke's horse was sluggish.

10

Finally, defendant Garrigan was aware of prior complaints of animal mistreatment at the Stork farm.

Given all these circumstances, the court finds that the proverbial "reasonable law enforcement officer" could have mistakenly believed he had reasonable grounds to seize mistreated, endangered and neglected horses. Thus, defendant Garrigan is entitled to qualified immunity.

## III. Due Process Claim

Mahnke was also allowed to proceed on her claim that she was denied procedural due process when her horse was seized. While neither party moves for summary judgment on this claim, the court will addresses its merit because the parties' submissions show there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2),

In *Siebert*, the court found that the plaintiff was entitled to a pre-deprivation hearing before her horse was taken. *Id*. at 659. The United States Supreme Court has held that neither intentional nor negligent deprivation of property rises to a constitutional violation as long as there are state remedies available for the loss of property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Whether Mahnke's horse was intentionally or negligently taken, the undisputed facts indicate that she had adequate post-deprivation remedies and that she took advantage of them. Specifically, Wis. Stat. § 173.22(1) provides an owner may seek return of the animal by filing a petition for an order from the circuit court for the county in which the animal was

11

taken into custody. Mahnke filed such a petition and her horse was returned to her. In light of the need to empower law enforcement officers to act swiftly where animals are endangered, this right to a post-deprivation hearing seems more appropriate. Defendant is, therefore, entitled to judgment as a matter of law on this claim.

ORDER

IT IS ORDERED that:

1. Defendant Daniel Garrigan's motion for summary judgment, dkt. #30, is GRANTED.

2. Plaintiff Kelly Mahnke's mottion for summary judgment, dkt. #41, is DENIED.

3. The clerk of court is directed to enter final judgment in favor of defendants and close this case.

Entered this 28th day of June, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge